UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAUNTAY WADE | Case No. 3:22-CR-3 JD |

**OPINION AND ORDER**

Now before the Court is the Government's motion *in limine* (DE 92) which seeks rulings regarding various evidentiary issues and lines of argument. The defendant, Shauntay Wade, through counsel, filed a response to this motion. Further, the Court had the benefit of discussing these matters at a telephonic status conference with the parties on January 31, 2024. For the following reasons the motion will be granted.

**A. Discussion**

The Court will address each of the Government's requests in turn.

*1. The admissibility of the 911 call*

The Government first seeks admission of the December 9, 2021, 911 call by E.K., Mr. Wade's then girlfriend, subject to redaction. Mr. Wade's response acknowledges admission if the Court determines it meets one of the proffered hearsay exceptions. For the following reasons the Court finds the call is admissible and will grant the Government's motion.

E.K. called 911 after Mr. Wade allegedly assaulted her during an argument at her home. This assault included Mr. Wade pulling a gun and pointing it at her. After being assaulted E.K. then retreated from her home, wearing only a robe, and barricaded herself in her car in her

driveway before calling 911. In the 911 call E.K. told the dispatcher she had been assaulted by Mr. Wade approximately five minutes before making the call and that he was still in her house.

When asked by the dispatcher whether any weapons were involved, E.K. reported that Mr. Wade had a gun. Officers responding to the call detained Mr. Wade and searched E.K.'s home for the gun. Officers found the gun in the house, and in proximity to marijuana and cocaine. The instant prosecution was later brought against Mr. Wade based on his possession of the firearm on December 9, 2021.

The Government seeks to admit the audio recording of the 911 call via two exceptions to the hearsay rule. First, as a present sense impression. That is a "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Second, as an excited utterance, which is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). As a general proposition, the Seventh Circuit has long held that descriptions made during 911 calls, including responses to questions posed by the 911 dispatcher, can qualify under both exceptions. *United States v. Boyce*, 742 F.3d 792 (7th Cir. 2014); *United States v. Thomas*, 453 F.3d 838 (7th Cir. 2006); *United States v. Joy*, 192 F.3d 761 (7th Cir. 1999); *see also Davis v. Washington*, 547 U.S. 813, 820, 827–30 (2006) (911 calls can be admitted as present sense impressions or excited utterances without violating the Sixth Amendment's confrontation clause).

The Court will first address whether the call qualifies under the present sense impression exception. In order to be admissible under this exception, three conditions must be met: (1) the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been

made while the speaker was perceiving the event or condition, or immediately thereafter. *Boyce*, 742 F.3d at 797 (quoting *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001)). E.K. was personally present during her altercation with Wade, so the only questions to decide are whether the statement was given without calculated narration and whether it was contemporaneous with the event.

As to the timing question, the Court finds the 911 call was sufficiently contemporaneous. E.K. indicated that she was making the call approximately five minutes after her altercation with Mr. Wade. Rule 803(1) is a practical rule which recognizes that "in many, if not most instances, precise contemporaneity is not possible and hence a slight lapse is allowable." *Boyce*, 742 F.3d at 797 (quoting the Advisory Committee's Note to Federal Rule of Evidence 803.) In fact, it may neither be feasible or wise to attempt to report events while one is under acute threat of harm from ongoing events. *Id.* A lapse of five minutes falls well within the timing requirements of 803(1) as interpreted by the Seventh Circuit and its sister courts. *Id.* (approvingly citing *United States v. Davis*, 577 F.3d 660, 669 (6th Cir. 2009) which held that a 911 call five minutes after an event was sufficiently contemporaneous). Further, E.K. made the 911 call from her car in the driveway of her residence where she had just been assaulted and where her assailant was still present, with a gun. It would be possible from these facts to conclude the event was still ongoing as E.K. was physically proximate to her armed assailant and at risk of further harm. In either case, whether the event was ongoing as E.K. gave her description, or it had concluded five minutes prior, this is sufficiently contemporaneous for Rule 803(1).

Next, the Court finds that the call was not delivered with calculated narration. Calculated narration refers to statements which are made after deliberation about what to say or provides statements for a particular reason beyond merely describing the occurring, or recently occurred,

events. *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002). An example of such calculation is providing narrative statements for the benefit of FBI agents listening to a meeting over a hidden microphone. *Id.* Notably, the mere fact a statement is made in response to questions does not make it a calculated narration. *Boyce*, 742 F.3d at 797–98. Here there is nothing to suggest that E.K. was providing a calculated narration rather than describing the events which had just occurred. Furthermore, E.K.'s statements closely resemble the 911 caller's statements in *Boyce* which the Seventh Circuit affirmed as admissible. *Id.* at 797. Like in *Boyce*, E.K. did not mention a gun until questioned by the dispatcher as to whether Mr. Wade had any weapons. *Id.* Consequently, the Court finds all three elements are satisfied and the 911 call is admissible as a present sense impression.

In the alternative, the 911 call would be admissible as an excited utterance. Determining whether a statement is an excited utterance is also a three-part test. The proponent of the evidence must show: "(1) a startling event occurred; (2) the declarant makes the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *Id.* at 798 (quoting *Joy*, 192 F.3d at 767.) It is undisputed that the startling event, an assault featuring a firearm, occurred against E.K. This leaves the Court to decide whether E.K. made her call under the stress of the excitement caused by that assault and whether her statement related to the event.

On the second element, the circumstances strongly support the Government. As previously noted, E.K. made the call within five minutes of being assaulted, and under a threat of additional action by an armed assailant as she was sitting in her car, and he was in the residence. This indicates the startling event could still be considered ongoing and E.K. was under the stress caused by that event. Further, E.K. reported that she fled her home without having time to get

dressed and reported to the dispatcher she was only wearing a robe, which suggests she was acting in response to acute duress. The Court will acknowledge that E.K. indicated, in response to the dispatcher's inquiry, that neither she nor anyone else were in danger at the time of call. (Exh. 1 at 2:13.) This fact is not dispositive as an individual can still be speaking under the stress of an event even after it has concluded. Additionally, this single mitigating fact is outweighed by the other circumstances as noted by the Court.

As to the third element, whether the statement relates to the startling event, *Boyce* is once again instructive. In *Boyce* the Seventh Circuit affirmed the district court's finding that the 911 caller's statement was related to the domestic battery when, in response to the dispatcher's inquiry, she reported that her assailant was armed with a gun. *Id.* at 798. In doing so, that caller was providing the dispatcher with information about her assailant and the danger she had experienced just before making the call. *Id.* This reasoning applies with equal force to this case. As such, the Court finds all three elements are satisfied and the 911 qualifies is admissible as an excited utterance.

With the admissibility of the 911 call being established, the Court concurs with the parties' agreement that the audio recording should be redacted to omit E.K.'s statement "he hit me" and the dispatcher's statements about Wade "assaulting you." These two statements are irrelevant to Mr. Wade's charged offense. At the telephonic status conference, the parties confirmed that they would meet and confer to ensure the appropriate redactions are made.

Accordingly, the Court will grant the Government's motion *in limine* related to the 911 call.

### 2. Limiting references to the prior jury trial

The Government's next motion seeks to restrict reference to the prior jury trial in this case, which ended with a deadlocked jury. Specifically, the Government would seek to prohibit any references to the prior trial which would inform the jury that this case was previously tried before a jury.[1] The Government requests that any necessary reference to prior testimony of a witness at this trial be referred to as "prior testimony under oath" or "prior sworn testimony." Mr. Wade agrees with this limitation. Accordingly, the Court will grant this motion. The Court would further instruct the parties to inform their respective witnesses of this limitation to help ensure compliance.

### 3. Argument that the investigation or prosecution of this case was racially motivated

The Government's next motion seeks to bar any forms of argument or questioning designed to interject issues of race into the trial. The Government contends this is in response to comments made by Mr. Wade's counsel during closing argument. The Government argues that there is no evidentiary basis for alleging racial animus as motivating any part of this case and that it is inappropriate to raise issues of selective prosecution before the jury. Fed. R. Crim. P. 12(b)(3)(A)(iv) (identifying selective or vindictive prosecution as an issue which must be raised before the Court prior to trial); *United States v. Washington*, 705 F.2d 489, 485 (D.C. Cir. 1983) (holding the issue of selective prosecution is to be resolved before the Court).

Mr. Wade's response does not dispute the evidentiary or legal conclusion of the Government's motion. Mr. Wade does not argue there is any evidentiary basis to support a claim of racial bias, nor does he contest any such claim should not be argued to the jury. Instead,

---

[1] Including but not limited to phrases such as "prior trial, prior mistrial," and "hung jury."

counsel argues he did not inject race into the case during his closing arguments. He concedes that he expressly noted to the jury that Mr. Wade is a "black man" when asking them to consider his perception of the situation, particularly his admission to police and the possible motivations for that admission. Nonetheless, Mr. Wade's counsel maintains that Mr. Wade's "perception of the situation is entirely relevant to the jury's consideration of the relevance and truthfulness of [Mr. Wade's] statements." (DE 97 at 2.) Mr. Wade's counsel goes on to object to any *in limine* ruling which would prevent arguments about Mr. Wade's state of mind when he spoke with law enforcement. Mr. Wade's counsel does not cite any legal authority in support of either proposition.

As noted to the parties at the telephonic status conference, the Court views a middle ground between their positions as most appropriate. While it is proper, based on this record, to bar any argument that the prosecution or investigation of this case was racially motivated, which defense counsel acknowledges, Mr. Wade is entitled to argue that his state of mind motivated and impacted his statements to the police. However, such arguments must be grounded in evidence.

For these reasons the Court will grant the Government's third motion *in limine* with a limited caveat. If Mr. Wade's counsel lays proper foundation, through the presentation of evidence, to discuss Mr. Wade's state of mind and explain why he might make a false admission, he may do so. However, even under such circumstances, it would be improper to make any allegation of racial animus in the investigation or prosecution of this case to the jury.

### *4. Argument about any Non-Testifying Witnesses*

The last motion *in limine* the Government presents is a request for the Court to bar the parties from argument related to missing witnesses not under control of either side. Specifically, the Government requests that defense counsel be barred from "introducing evidence about or arguing that any inference can be drawn from the face that certain witnesses did not testify." (DE 92 at 10.) The Government indicates this concern is based on closing arguments at the last trial where defense counsel allegedly invited the jury to speculate on what one or more witnesses, who did not testify at trial, would have testified to if they had been called to the stand. (DE 92 at 9.) For context, at the previous trial only some of the responding police officers testified. Mr. Wade's counsel noted these absences in the context of how Mr. Wade potentially received knowledge[2] of the gun in the residence, and in challenging the chain of custody of the firearm for DNA testing purposes.[3] In support of this request the Government cites to *United States v. Simpson*, which held that "when the witness is equally available to both sides, the preferred practice is to preclude the argument rather than to leave the jury free to speculate about a lot of non-evidence." 974 F.2d 845, 848 (7th Cir. 1992) (citing *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987)).

Mr. Wade responds by arguing that this standard practice would not be applicable to Mishawaka Police officers as they are not equally available to both sides. As the Mishawaka Police are closely associated with the Government in developing the case and seeing their work vindicated by the prosecution and thus practically unavailable to the defense. *See United States v.*

---

[2] Defense counsel asked several testifying officers on cross examination if they knew what Mr. Wade, who was in custody upon their arrival, had been told by non-testifying officers when he was placed in handcuffs and the squad car.

[3] Among the officers who did not testify was Officer Randall Finney, who was undergoing field training and who collected the firearm evidence. At trial his Field Training Officer Kendy Majors (nee Baker) testified as to observing Officer Finney and instructing him through the evidence collection, laying the foundation for the admission of the firearm and DNA evidence.

*Mahone*, 537 F.2d 922, 926 (7th Cir. 1976); *see also United States v. Tavarez*, 626 F.3d 902, 905 (7th Cir. 2010) (citing to *Mahone* and reaffirming the proposition that a witness might be effectively unavailable to one party based on her relationship to the other party in the case).

Mr. Wade also cites to *Mahone* in support of the proposition that there is a meaningful distinction between a missing witness instruction and mere commentary by counsel on the fact a witness is absent. He quotes *Mahone*, which stated: "There is a difference between an instruction [on missing witnesses], which has the weight of law, and argument of counsel, which is only that." 537 F.2d at 927. *Mahone* sustained the district judge's decision not to issue a missing witness instruction but held it was error for the trial judge to refuse "to let the defense counsel comment in his final argument on the government's failure to call the absent witness." *Id.* at 927–28.  Nevertheless, the Seventh Circuit affirmed the conviction as it was not a prejudicial error. *Id.*

To fully understand this argument it is helpful to understand what the missing witness instruction is. The missing witness instruction is a jury instruction which directs the jury that it may infer from a witness' absence that the witness would have provided information unfavorable to the Government's case. *Tavarez*, 626 F.3d at 904. The instruction is generally disfavored in this Circuit and may only be given if the defendant establishes two conditions apply; (1) that if called, the witness would have been able to provide relevant, noncumulative testimony on an issue in the case; and (2) that the witness was peculiarly in the other party's power to produce. *Id.* at 904–05.

Mr. Wade indicates he does not intend to request a "missing witness" instruction be provided to the jury. Rather, to the extent the Government seeks to argue that witnesses either gathered or provided evidence that proves the prosecution's case but does not call those witnesses at trial, Mr. Wade would want to point out to the jury that they did not hear testimony

9

from those witnesses. The Court will note that at the status conference the Government indicated it would be calling additional officers who were present at the scene and may have communicated with Mr. Wade. This may impact the appropriateness of Mr. Wade making his planned argument, but the Court will defer addressing the issue until trial when it is clear which witnesses will testify.

At the status conference the parties also discussed this issue as it relates to E.K., Mr. Wade's then girlfriend who made the 911 call which led to police ultimately discovering the gun. E.K. did not testify at the first trial and the Government alleges Mr. Wade improperly asked the jury to speculate on what her testimony might have been. The Government also advised that E.K. has been subpoenaed for this coming trial. While they are as of yet undecided on whether she will be called during the prosecution's case, she will be available should the defense like to call her. At the conference Mr. Wade's counsel responded that does not change his position and even if she is available for him to call, he might instead merely comment on the fact she did not testify.

While Mr. Wade is not obligated to call any witnesses or present any evidence, this position causes the Court some apprehension. In particular, it seems to run afoul of *Simpson's* admonition that when a witness is equally available to both sides, the preferred practice is to preclude the argument [about her absence] rather than to leave the jury free to speculate about a lot of non-evidence." 974 F.2d at 848. As an aside, if allowed by the Court, this decision by the defense would certainly open the door for the Government to argue that E.K. was presently available but the defense also chose not to call her despite the opportunity. Regardless, given E.K. has been subpoenaed and her testimony at trial would moot this issue, the Court will defer making a final decision until the appropriate point at trial.

With all that being said, the Court will grant the Government's motion in limine subject to certain limitations. Specifically, the parties are generally prohibited from asking the jury to infer an absent witness did not testify because they possess damaging information to the opposing party. The parties seem to accept that proposition. However, to the extent the Government referred to a witness as being involved in collecting evidence or building a case but did not have them testify, defense counsel may note to the jury they did not actually hear that witnesses' testimony and argue this creates evidentiary gaps in the case. As noted at the conference, it is appropriate for counsel to comment on the evidence and the absence of evidence. The Court reserves deciding to what extent the parties may comment on the absence of E.K., as the decision by either party to call her would moot the issue.

### B. Conclusion

Accordingly, the Government's motion *in limine* will be granted consistent with the conditions described in this order.

SO ORDERED.

ENTERED: February 2, 2024

                                                 /s/ JON E. DEGUILIO  
                                                 Judge  
                                                 United States District Court